Christopher T. Micheletti (136446)
Judith A. Zahid (215418)
Michael S. Christian (212716)
Jiangxiao Athena Hou (215256)
ZELLE HOFMANN VOELBEL & MASON LLP
44 Montgomery St., Suite 3400
San Francisco, CA 94104
Telephone:    (415) 693-0700
Facsimile:     (415) 693-0770
Email:        cmicheletti@zelle.com
              jzahid@zelle.com
              mchristian@zelle.com
              ahou@zelle.com

*Counsel for Plaintiff and the Classes*

*[Additional Counsel Appear on Signature Page]*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA MEY, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BUMBLE BEE FOODS LLC, STARKIST COMPANY, TRI-UNION SEAFOODS LLC, and KING OSCAR, INC.<br><br>        Defendants. | Case No.  **'15 CV 2125 DMS KSC**<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

        Plaintiff DIANA MEY, by and through her undersigned attorneys, complains and

alleges as follows.  All allegations herein other than those relating directly to Plaintiff are based

on information and belief.

## NATURE OF THE ACTION

        1.    This action arises out of a conspiracy by the three largest producers of packaged

seafood products in the United States, its territories and the District of Columbia – Bumble Bee

---

1

Foods LLC, StarKist Company, Tri-Union Seafoods LLC, and King Oscar, Inc. (collectively, "Defendants") – which began at least as early as January 1, 2005, and continues to the present (the "Class Period"), to fix, raise, maintain, and/or stabilize prices for packaged seafood products within the United States, its territories and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3) and state antitrust, consumer protection and unfair competition statutes.  As used herein, the term "packaged seafood products" refers to shelf-stable seafood products (predominantly tuna) that are sold in cans, pouches or ready-to-eat serving packages.

## JURISDICTION AND VENUE

2.      This complaint is filed under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, equitable relief, costs of suit, and reasonable attorneys' fees for violation of Section 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3.  The Court has original federal question jurisdiction over the Sherman Act claim asserted in this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.  This Court also has jurisdiction over the instant matter pursuant to 28 U.S.C. § 1332(d) and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, which vest original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant.  The $5 million amount-in-controversy and diverse citizenship requirements of CAFA are satisfied in this case.

3.      Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d) because Defendants reside, transact business, are found within, and/or have agents within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

4.      This Court has personal jurisdiction over Defendants because, *inter alia*, each: (a) transacted business in this District; (b) directly or indirectly sold and delivered packaged seafood

1    products in this District; (c) has substantial aggregate contacts with this District; and (d) engaged

2    in an illegal price-fixing conspiracy and agreement to limit capacity that was directed at, and had

3    the intended effect of causing injury to, persons and entities residing in, located in, or doing

4    business in this District.

## PLAINTIFF

6        5.      Plaintiff Diana Mey is a current resident of the State of West Virginia.  During the

7    Class Period, Plaintiff indirectly purchased packaged seafood products for her own household's

8    use and not for resale from one of more of the Defendants and has suffered pecuniary injury as a

9    result of the antitrust violations alleged herein.

## DEFENDANTS

11       6.      Defendant Bumble Bee Foods LLC ("Bumble Bee") is a domestic corporation

12   with its principal place of business located at 280 10th Avenue, San Diego, CA 92101.  Bumble

13   Bee produces and sells packaged seafood products throughout the United States (including this

14   District), its territories and the District of Columbia.  Bumble Bee is privately owned by Lion

15   Capital ("Lion"), based in the United Kingdom.

16       7.      Defendant StarKist Company ("StarKist") is a domestic corporation with its

17   headquarters at 225 North Shore Drive, Suite 400, Pittsburgh, PA 15212.  StarKist produces and

18   sells packaged seafood products throughout the United States (including this District), its

19   territories and the District of Columbia.  StarKist is privately owned by Dongwon Enterprise

20   ("Dongwon"), based in South Korea.

21       8.      Defendant Tri-Union Seafoods LLC is a domestic corporation with its principal

22   place of business located at 9330 Scranton Road, Suite 500, San Diego, CA 92121.  Tri-Union

23   Seafoods LLC produces and sells packaged seafood products throughout the United States

24   (including this District), its territories and the District of Columbia, and markets these products

25   under the brand name Chicken of the Sea.  Unless otherwise indicated, Tri-Union Foods LLC

26   will be referred to herein as "Chicken of the Sea."

27

28

9.     Defendant King Oscar, Inc. ("King Oscar") is a domestic corporation with its principal place of business at 3838 Camino Del Rio North, Suite 115, San Diego, CA 92108. King Oscar produces and sells packaged seafood products throughout the United States (including this District), its territories and the District of Columbia.

10.    Defendants Chicken of the Sea and King Oscar (together, "Tri-Union") are wholly owned by Thai Union Frozen Products, a public company headquartered in Thailand.

## UNNAMED CO-CONSPIRATORS

11.    On information and belief, at all relevant times, other producers of packaged seafood products willingly conspired with Defendants in their unlawful restraint of trade.  All averments herein against Defendants are also averred against these unnamed co-conspirators.

## AGENTS

12.    The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

## INTERSTATE TRADE AND COMMERCE

13.    Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment, payments, and other documents essential to the sale of packaged seafood products in interstate commerce between and among offices of Defendants and their customers located throughout the United States, its territories and the District of Columbia.

14.    Throughout the Class Period, Defendants transported substantial amounts of packaged seafood products in a continuous and uninterrupted flow of interstate commerce throughout the United States, its territories and the District of Columbia.

15.    Throughout the Class Period, Defendants' unlawful activities, as described herein, took place within and substantially affected the flow of interstate commerce and had a direct, substantial and reasonably foreseeable effect upon commerce in the United States, its territories and the District of Columbia.

CLASS ACTION COMPLAINT

**FACTUAL ALLEGATIONS**

**A.     Overview of the Packaged Seafood Product Industry.**

16.     Packaged seafood products are composed of raw seafood that is processed to preserve and enhance flavor, and ensure product safety.  Because it is typically caught far offshore, raw seafood is usually delivered to canneries frozen or refrigerated.

17.     Upon delivery to a processing plant, an initial quality control inspection is performed to ensure the seafood was stored and transported at the proper temperature and is in acceptable condition.  The seafood is maintained at temperatures ranging from 0°Celsius to -18°C until processing.  Seafood passing the initial quality control inspection is prepared for packaging.

18.     Accepted seafood is initially transferred to large ovens for "pre-cooking."  After further cleaning, the seafood is fed into filling machines where product packages (either cans, pouches, or cups) are filled with pre-set amounts.  Filled packages are moved to sealing machines where they are closed and sealed.

19.     Each package is affixed with a permanent production code identifying plant, product, date packed, batch, and other information.  Filled and sealed packages are then cooked under pressure to make the products commercially sterile and give them a long shelf life.

20.     Packaged seafood products are sold to club warehouses, retail groceries, grocery cooperatives, mass merchandisers, and drug stores, among others.

21.     According to a May 2012 presentation by Bumble Bee, total United States retail sales of shelf-stable seafood products were $2.346 billion in 2011 and were estimated to be $2.397 billion in 2012.  In one report, Bumble Bee estimated that canned tuna represents 73% of this value.  In the same report, Bumble Bee estimated that total United States retail sales of shelf-stable tuna were $1.719 billion in 2011 and were estimated to be $1.750 billion in 2012.

22.     Defendants are the three largest domestic manufacturers of packaged seafood products.  The industry is highly concentrated.  According to the aforementioned presentation by Bumble Bee, it had 29% of the domestic shelf-stable seafood market in 2011, Chicken of the Sea

CLASS ACTION COMPLAINT

had 18.4% and StarKist had 25.3%.  The remaining market share was comprised of smaller companies and private label brands.  With respect to shelf-stable tuna, StarKist had 34.6% of the market, Bumble Bee had 27.8% and Chicken of the Sea had 19.4%.  In December of 2014, the *Wall Street Journal* reported that the Defendants' respective shares of the domestic market for canned tuna were 13% for Chicken of the Sea, 25% for Bumble Bee, and 36% for StarKist.  Bualuang Securities reported the shares for the domestic canned tuna market slightly differently, with StarKist at 30%, Bumble Bee at 28% and Chicken of the Sea at 20%.

23.     This oligopolistic structure within the industry is the result of recent mergers and acquisitions.  For example, in 1997, Van Camp Seafood Company ("Van Camp") was acquired by the investment group Tri-Union Seafoods LLC, of which Thai Union Frozen Products was a member.  Thereafter, Thai Union Frozen Products bought out the other investors to acquire Van Camp completely, which it renamed Chicken of the Sea International, an entity that was later merged into Tri-Union Seafoods LLC.  In 2008, Dongwon acquired StarKist from Del Monte Foods for $363 million.  Similarly, in 2014, Thai Union Frozen Products bought King Oscar, a Norwegian sardine canner that sold 37% of its products in the United States.  And in December of 2014, Thai Union Frozen Products announced the acquisition from Lion (subject to regulatory approval) of Bumble Bee for $1.51 billion.  The combination of Chicken of the Sea and Bumble Bee would have created a virtual duopoly, with the combined entity substantially exceeding the market share of StarKist.  Thai Union Frozen Products had planned to finance the acquisition partly through a preferential public offering to existing shareholders that would have raised approximately $380 million.

**B.     The Department of Justice Investigation.**

24.     The San Francisco office of the antitrust division of the United States Department of Justice ("DOJ") is conducting an investigation into anticompetitive practices in the United States packaged seafood products industry.  The DOJ has convened a grand jury.  Two of the three largest United States packaged seafood product manufacturers, Chicken of the Sea and Bumble Bee, have publicly confirmed receipt of grand jury subpoenas.

25.     On July 23, 2015, Thai Union Frozen Products suspended a preferential public offering in light of a grand jury investigation commenced by the DOJ.  Thai Union Frozen Products disclosed on that day that both Bumble Bee and Chicken of the Sea had received grand jury subpoenas relating to an antitrust investigation of packaged seafood products.  The publication *Undercurrent News* further reported in an article dated that same day that "Thai Union held a conference with analysts on the suspension of the share offer, in which the company's management said other US seafood producers have also received a subpoena requiring the production of relevant information to the DOJ."  The publication *Global Competition Review* similarly reported as follows:

> In a letter to the Bangkok stock exchange on Wednesday, Thai Union chairman Kraisorn Chansiri confirmed that the US Department of Justice is investigating his company's sector, causing Thai Union to suspend a stock issuance that had been intended to finance the $1.5 billion acquisition of Bumble Bee.
>
> He said the Thai Union subsidiary Tri-Union Seafoods, which operates in the US under the Chicken of the Sea brand, had received a subpoena "requiring Tri-Union to provide relevant information to the DoJ in relation to an antitrust investigation of the packaged seafood industry in the United States."

26.     The article goes on to state:

> An industry expert said the subpoena does not appear to be limited to the merger review, and early information indicates the demand for information came from a separate section of the antitrust division, not one tasked with analyzing deals.
>
> It is highly likely that something produced in the merger investigation sparked this investigation touching the industry as a whole rather than just the parties to the deal, he said.
>
> ****
>
> The source said others in the industry are now anticipating that they too will be subpoenaed….

CLASS ACTION COMPLAINT

27.     Based on these statements, it appears that StarKist received a subpoena as well and that the DOJ's investigation extends to the entire domestic packaged seafood products sector.

28.     The fact that these companies received subpoenas from a federal grand jury is significant, as is reflected in Chapter 3 of the 2014 edition of the DOJ's *Antitrust Division Manual*, available at http://www.justice.gov/atr/public/divisionmanual/chapter3.pdf.  Section F.1 of that chapter notes that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution." *Id*. at III-82.  The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division." *Id*.  "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General.  If approved by the Assistant Attorney General, letters of authority are issued for all attorneys who will participate in the grand jury investigation." *Id*. at III-83.  "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district from or to which price-fixed sales were made or where conspiratorial communications occurred." *Id*.

C.    **The Structure and Characteristics of the Packaged Seafood Product Market Render the Conspiracy Plausible.**

29.     The structure and characteristics of the Packaged Seafood market in the United States are conducive to a price-fixing agreement.

30.     Packaged seafood products are commodity products that are sold directly to retail chains and through grocery wholesalers and distributors.  Packaged seafood product varieties have similar shelf life, contain similar amounts of seafood, and are marketed in cans, pouches, and cups.  Therefore, purchasers of packaged seafood products are more likely to be influenced by price when making a purchasing decision.

31.     There are substantial barriers that preclude, or reduce, entry into the packaged seafood product market, including high start-up costs, manufacturing expertise, access to raw materials, and access to distribution channels.  Therefore, Defendants could collectively raise prices without fear of being undercut by new entrants.

32.     Purchasers routinely source their packaged seafood products from one of the three Defendants.  As a result, Defendants dominate the United States packaged seafood products market.

33.     Defendants possessed significant market power to raise prices for packaged seafood products above competitive levels in the United States.

34.     There are no economically reasonable substitutes for packaged seafood products. Alternative seafood, such as frozen seafood or fresh seafood, do not have commensurate shelf lives and require preparation, such as cooking, before they can be consumed.

35.     There are also economic indications that support the conclusion that there was collusive pricing within the domestic packaged seafood products industry.

36.     Consumption of packaged seafood products, particularly canned tuna, has declined over the last ten years in the United States.  The annual consumption per person was 3.1 lbs. in 2005, but had fallen to 2.3 lbs. in 2013.  An article in the *Washington Post* graphically represented this decline by measuring United States annual per capita consumption from 1930 to 2010:



CLASS ACTION COMPLAINT

The same article presented this graph, showing that while Americans are buying less canned seafood, they are paying more for what they do buy:



37.     Given this decline in consumption of packaged seafood products, one would expect rational businesses to reduce the prices for packaged seafood products, but that did not happen.  The following chart, taken from data available at the Bureau of Labor Statistics, depicts seasonally adjusted U.S. city average prices for shelf stable fish and seafood from January 2005 through the first part of 2015, with the period 1982-84 used as a baseline.



38.     Raw material costs do not adequately explain these price increases. While the cost per metric ton of skipjack tuna rose in 2012 and early 2013, it declined precipitously thereafter. According to the April 19, 2015 issue of *Tuna Market Intelligence*, "[a]s recently as June last year, skipjack was selling at US$1,800 in Bangkok. But the price has since plummeted to US$1,000 since the beginning of the year, with industry officials anticipating further reductions in price this year." Tuna exporters in Ecuador noted in January of 2015 that the price per metric ton had declined from $1,400 to $800. And the United Nations Food & Agriculture Organization noted in its May 2015 "Food Outlook" biannual report that tuna prices had dropped considerably in 2014: "tuna prices declined significantly due to excess supply, with frozen skipjack prices hitting a 6-year low." Despite these drastically declining raw material costs, Defendants did not decrease prices and try to obtain more market share.

39.     Thai Union Frozen Products' Annual Reports discuss this situation. In its 2013 Annual Report, Thai Union Frozen Products stated that "our branded tuna business showed resilient growth from 2012 thanks to the price adjustments in Europe and *more rational market competition in the US*." (Emphasis added). It stated in the same report that its future profit margins would depend upon "*[r]easonable US canned tuna competition without unnecessary price*." (Emphasis added). In its 2014 Annual Report, Thai Union Frozen Products explicitly noted that this goal had been achieved. It stated:

> *Thanks to reduced price competition (absence of cut throat pricing)* and generally lower fish Chicken of the Sea, *our own tuna brands marked a great year of increased profitability*. Despite minimal sales growth in the US, competitive inventory cost and reasonable market conditions helped lift the margin of our US brand. (Emphases added).

The same report went on to note that "*sensible market competition*, supported by lower raw material costs, made it possible for our own tuna brands to expand their margins through the year despite limited volume growth." (Emphasis added). It indicated that future revenue growth would again be dependent upon "*[r]easonable US canned tuna market competition that focuses more on consumption creation than market share alone*." (Emphasis added). The "reasonable

market conditions," "more rational market competition," "sensible market competition,"

avoidance of battles for market share and "absence of cut throat pricing" that the reports note

could only have come about through collusion.  It would have been against the individual self-

interest of each Defendant to eschew increasing market share during this period by lowering

prices.

40.    There were numerous business opportunities for Defendants to meet and engage

in such collusion.  One such opportunity is provided by the Tuna Council.  As explained on that

organization's website:

> The National Fisheries Institute's Tuna Council represents
> the largest processors and household names for canned and
> pouch tuna in the U.S. including *Bumble Bee*®, *Chicken of
> the Sea*® and *StarKist*®.  The Tuna Council speaks for the
> tuna industry on numerous issues including food safety,
> labeling, sustainability, nutrition education and product
> marketing.

41.    An example of such joint conduct is provided by the "Tuna the Wonderfish"

advertising campaign of 2011-12.  This campaign was bankrolled by the Defendants and carried

out under the auspices of the Tuna Council with the support of Thai processors.  In it, the

Defendants teamed up for marketing purposes.  Joe Tuza, Senior Vice-President of Marketing

for StarKist, reportedly said that "[w]e worked together surprisingly well."  He said further that

the campaign, intended to increase consumption of tuna, was based on the hope that "as the

water level rises…all boats rise with the tide," referring to the three Defendant companies.  The

same philosophy appears to undergird the alleged price-fixing conspiracy.

42.    Another opportunity to collude was provided through bilateral copacking

agreements between Bumble Bee and Chicken of the Sea.  Bumble Bee copacks for Chicken of

the Sea at the former's plant located in Santa Fe Springs, California with respect to West Coast

sales.  Chicken of the Sea does the same for Bumble Bee at the former's plant in Georgia with

respect to East Coast sales.  Thus, even before the proposed merger, these two companies were

cooperating closely.  These interlocking relationships provided an excellent opportunity to

collude on pricing.

**D.      Defendants' Anticompetitive Conduct.**

43.      On information and belief, Defendants Chicken of the Sea, Bumble Bee and StarKist participated in anticompetitive activities beginning at least as early as January 2005 and continuing to the present.  These activities included telephone calls, and frequent in-person meetings at specified locations, including hotels and restaurants.  During these meetings and calls, Defendants shared sensitive business information, and entered into agreements to fix, raise, stabilize, and maintain prices of packaged seafood products sold to consumers in the United States.

44.      On information and belief, senior executives of Defendants met at least twice a year.

45.      On information and belief, at other times, top executives regularly discussed prices and shared sensitive customer information.

46.      On information and belief, throughout the class period, Defendants communicated regularly by telephone to discuss prices and sensitive customer information.  For example, during at least one telephone conversation between Bumble Bee and StarKist executives, StarKist informed Bumble Bee that StarKist and Chicken of the Sea were in agreement to raise prices.

47.      On information and belief, Defendants discussed pricing, and agreed to coordinate the timing and amount of price increases for packaged seafood products sold to customers in the United States.  Defendants also agreed to restrict capacity and allocate customers.

48.      On information and belief, Defendants agreed to exchange, and did exchange, information during their telephone conversations and meetings for the purpose of monitoring and enforcing adherence to their agreements.

**E.      Plaintiff Suffered Antitrust Injury.**

49.      Defendants' conspiracy had the following effects, among others:

a.      Price competition has been restrained or eliminated with respect to packaged seafood products; and

b.      The prices of packaged seafood products have been fixed, raised, maintained, or stabilized at artificially inflated levels.

50.     During the class period, Defendants charged supra-competitive prices for packaged seafood products sold to Plaintiff.  By reason of Defendants' alleged violations of the antitrust laws, Plaintiff and the Classes have sustained injury, having paid higher prices for packaged seafood products than they would have paid absent Defendants' alleged illegal contract, combination or conspiracy, and, as a result, has suffered damages in an amount to be determined.  This is an antitrust injury of the type the antitrust laws were meant to punish and prevent.

51.     Packaged seafood products are identifiable, discrete products that remain unchanged from the point at which they are sold by Defendants until they reach Plaintiff and the Classes.  Packaged seafood products follow a traceable physical chain of distribution from Defendants to Plaintiff and the members of the Classes, and price and cost changes attributable to Defendants' price-fixing conspiracy can be traced through the chain of distribution to Plaintiff and the members of the Classes.

52.     Just as packaged seafood products can be physically traced through the supply chain, so can their price be traced to show that changes in the prices paid by direct purchasers of packaged seafood products affect prices paid by the indirect purchasers of packaged seafood products in the chain of distribution.

53.     The economic necessity of passing through cost changes increases with the degree of competition a firm faces.  The wholesale, distributor, club warehouse, retail grocery, grocery cooperative, mass merchandiser and drug store market for packaged seafood products are subject to vigorous price competition.  The aforementioned market participants have thin net margins, and are therefore at the mercy of their product costs, such that increases in the price of packaged seafood products lead to corresponding increases in prices to their customers.  When downstream distribution markets are highly competitive, as they are in the case of packaged seafood products,

CLASS ACTION COMPLAINT

overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiff and members of the Classes.

54. Hence the inflated prices of packaged seafood products resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiff and the other members of the Classes by wholesalers, distributors and retailers.

55. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[1]

56. As Professor Jeffrey K. MacKie-Mason (Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers… Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[2]

---

[1] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).

[2] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106 (Cal. Sup. Ct. Aug. 29, 2000).

CLASS ACTION COMPLAINT

57.     Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously.  That analysis – called regression analysis – is commonly used in the real world and in litigation to determine the impact of an upstream price increase on product prices down the chain of distribution.

58.     Defendants' overcharges impacting the prices of packaged seafood products through the chain of their distribution can be measured and quantified.  Commonly used and well accepted economic models can be used to measure both the existence and the amount of the supra-competitive charge passed through the chain of distribution.  Thus, the economic harm to Plaintiff and the members of the Classes can be quantified.

**F.     The Statute of Limitations Did Not Begin to Run Because Plaintiff Did Not and Could Not Discover Her Claims.**

59.     Plaintiff and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until shortly before this litigation commenced.

60.     Plaintiff and the members of the Classes are consumers who purchased packaged seafood products.  They had no direct contact or interaction with the Defendants and had no means from which they could have discovered the combination and conspiracy described in this Complaint prior to shortly before this litigation was commenced.

61.     No information in the public domain was available to Plaintiff and the members of the Classes prior to public disclosure of the DOJ's investigation of the packaged seafood product industry, which only recently revealed sufficient information to suggest that the Defendants were involved in a conspiracy to fix prices for packaged seafood products.  Plaintiff and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with direct purchasers of such products, much less the fact

CLASS ACTION COMPLAINT

1    that they and their co-conspirators had engaged in the combination and conspiracy alleged

2    herein.

3         62.    For these reasons, the statute of limitations as to Plaintiff's and the Classes'

4    claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and

5    members of the Classes have alleged in this Complaint.

6         **G.    Defendants' Fraudulent Concealment Tolled the Statute of Limitations.**

7         63.    Throughout the relevant period, Defendants affirmatively and fraudulently

8    concealed their unlawful conduct against Plaintiff and the Classes.

9         64.    Plaintiff and members of the Classes did not discover, and could not discover

10   through the exercise of reasonable diligence, that Defendants were violating the law as alleged

11   herein until shortly before this litigation was commenced.  Nor could Plaintiff and the Class

12   members have discovered the violations earlier than that time because Defendants conducted

13   their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance

14   thereof, and fraudulently concealed their activities through various other means and methods

15   designed to avoid detection.  In addition, the conspiracy was by its nature self-concealing.

16        65.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect to

17   packaged seafood products, which they affirmatively concealed, in at least the following

18   respects:

19        a.    By agreeing among themselves not to discuss publicly, or otherwise reveal, the

20             nature and substance of the acts and communications in furtherance of their illegal

21             scheme, and by agreeing to expel those who failed to do so; and

22        b.    By agreeing on other means to avoid detection of their illegal conspiracy to fix the

23             prices of packaged seafood products.

24        66.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

25   and the Classes assert the tolling of any applicable statute of limitations affecting the rights of

26   action of Plaintiff and members of the Classes.

27

28

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this action on her own behalf and as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure seeking equitable and injunctive relief on behalf of the following Class (the "Nationwide Class"):

> All individuals and entities that indirectly purchased packaged seafood products for their own use and not for resale within the United States, its territories and the District of Columbia from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

68.     Plaintiff also brings this action on behalf of herself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following classes (the "Damages Classes"):

> All individuals and entities that indirectly purchased packaged seafood products for their own use and not for resale in the Indirect Purchaser States[3] from any Defendant or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2005 and the present.  Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

69.     The Nationwide Class and the Damages Classes are referred to herein as the "Classes."

70.     Due to the nature of the trade and commerce involved, Plaintiff believes that Class members are sufficiently numerous and geographically dispersed throughout the United States, its territories and the District of Columbia so that joinder of all Class members is impracticable.

---

[3] The Indirect Purchaser States are the states listed in Counts II and III, and each state class comprises individuals and entities that have made indirect purchases of Defendants' packaged seafood products in the state.

71.     There are questions of law and fact which are common to the claims of Plaintiff and the Classes, including, but not limited to:

a.     Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for packaged seafood products;

b.     Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, and/or maintain the prices for packaged seafood products;

c.     The existence and duration of the horizontal agreements alleged herein to fix, raise, maintain, and/or stabilize the prices for packaged seafood products;

d.     Whether Defendants violated Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

e.     Whether Defendants' agents, officers, employees, or representatives participated in correspondence and meetings in furtherance of the illegal conspiracy alleged herein, and, if so, whether such agents, officers, employees, or representatives were acting within the scope of their authority and in furtherance of Defendants' business interests;

f.     Whether, and to what extent, the conduct of Defendants caused injury to Plaintiff and members of the Classes, and, if so, the appropriate measure of damages; and

g.     Whether Plaintiff and members of the Classes are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 and 3 of the Sherman Act.

72.     Plaintiff's claims are typical of the claims of the members of the Classes.

73.     Plaintiff will fairly and adequately assert and protect the interests of the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Classes.

74.     Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

CLASS ACTION COMPLAINT

75.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members.

76.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

a.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

b.    The Classes are readily definable and one for which purchase records should exist.

c.    Prosecution as a class action will eliminate the possibility of repetitious litigation.

d.    Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

e.    Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

77.    This class action presents no difficulties of management that would preclude its maintenance as a class action.

## COUNT I

**Violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3)**

78.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

79.    Defendants and their co-conspirators engaged in a continuing contract, combination, and conspiracy to artificially fix, raise, maintain, and/or stabilize the prices of packaged seafood products within the United States, its territories, and the District of Columbia in violation of Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3).

CLASS ACTION COMPLAINT

80.     Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by fixing, raising, maintaining, and/or stabilizing at artificial and non-competitive levels, the prices of such packaged seafood products.

81.     In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain and/or stabilize the price of packaged seafood products.

82.     The illegal combination and conspiracy alleged herein had the following effects, among others:

     a.     The prices charged by Defendants to, and paid by, Plaintiff and members of the Classes for packaged seafood products were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

     b.     Plaintiff and members of the Classes have been deprived of free and open competition in the purchase of packaged seafood products;

     c.     Plaintiff and members of the Classes have been required to pay more for packaged seafood products than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy;

     d.     Competition in the sale of packaged seafood products has been restrained, suppressed or eliminated.

83.     As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Classes have been injured and damaged in their business and property in an amount to be determined according to proof.

84.     These violations are continuing and will continue unless enjoined by this Court.

85.     Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Nationwide Class seek the issuance of an injunction against Defendants, preventing and restraining the violations alleged herein.

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>COUNT II</u>

### Violation of State Antitrust Statutes

86.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

87.     Plaintiff further alleges as follows:

       a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Arizona.

       b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Arizona; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona; (3) Arizona Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

       c.      During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

       d.      As a direct and proximate result of Defendants' unlawful conduct, Arizona Purchasers have been injured in their business and property and are threatened with further injury.

       e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§44-1401, *et seq.*[4] Accordingly, Arizona Purchasers seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

---

[4] In compliance with Arizona's Antitrust Act, Ariz. Rev. Stat. § 44-1415, Plaintiff mailed a copy of this Complaint to the Arizona Attorney General on September 23, 2015.

CLASS ACTION COMPLAINT

88.  Plaintiff further alleges as follows:

a.  Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 2005, and continuing thereafter to the present, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professional Code.  Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize and maintain prices of packaged seafood products at supra-competitive levels.

b.  The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and stabilize the prices of, and to allocate markets for packaged seafood products.

c.  For the purpose of forming and effectuating the unlawful trust, the Defendants and their co-conspirators have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above and the following: (1) fixing, raising, stabilizing and/or maintaining the price of packaged seafood products; and (2) allocating among themselves the production of packaged seafood products.

d.  The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) price competition in the sale of packaged seafood products has been restrained, suppressed and/or eliminated in the State of California; (2) prices for packaged seafood products sold by Defendants and their co-conspirators have been fixed, raised, maintained and

CLASS ACTION COMPLAINT

stabilized at artificially high, non-competitive levels in the State of California; and (3) those who purchased packaged seafood products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

e.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and California Purchasers have been injured in their business and property in that they paid more for packaged seafood products than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of Section 16720 *et seq.* of the California Business and Professions Code, Plaintiff and the California Purchasers seek treble damages and the costs of suit, including reasonable attorneys' fees, pursuant to Section 16750(a) of the California Business and Professions Code.

89.    Plaintiff further alleges as follows:

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in the District of Columbia.

b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) District of Columbia Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.    During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

CLASS ACTION COMPLAINT

d.     As a direct and proximate result of Defendants' unlawful conduct, District of Columbia Purchasers have been injured in their business and property and are threatened with further injury

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*  Accordingly, District of Columbia Purchasers seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

90.    Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Hawaii.

b.     Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Hawaii purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, Hawaii Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Hawaii Code, H.R.S. § 480-4.

CLASS ACTION COMPLAINT

1   Accordingly, Hawaii purchasers seek all forms of relief available under

2   Hawaii Code, H.R.S. § 480-1 *et seq.*

3   91.   Plaintiff further alleges as follows:

4   a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce

5   by affecting, fixing, controlling and/or maintaining, at artificial and/or

6   non-competitive levels, the prices at which packaged seafood products

7   were sold, distributed or obtained in Iowa.

8   b.   Defendants' combinations or conspiracies had the following effects: (1)

9   packaged seafood product price competition was restrained, suppressed,

10   and eliminated throughout the Iowa; (2) packaged seafood product prices

11   were raised, fixed, maintained, and stabilized at artificially high levels

12   throughout the Iowa; (3) Iowa Purchasers paid supracompetitive,

13   artificially inflated prices for packaged seafood products.

14   c.   During the Class Period, Defendants' illegal conduct substantially affected

15   Iowa commerce.

16   d.   As a direct and proximate result of Defendants' unlawful conduct, Iowa

17   Purchasers have been injured in their business and property and are

18   threatened with further injury.

19   e.   By reason of the foregoing, Defendants have entered into agreements in

20   restraint of trade in violation of Iowa Code §§ 553.1 *et seq.*  Accordingly,

21   Iowa Purchasers seek all forms of relief available under Iowa Code §§

22   553.1.

23   92.   Plaintiff further alleges as follows:

24   a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce

25   by affecting, fixing, controlling and/or maintaining, at artificial and/or

26   non-competitive levels, the prices at which packaged seafood products

27   were sold, distributed or obtained in Kansas.

28

26

CLASS ACTION COMPLAINT

b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Kansas; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas; (3) Kansas Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.    During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, Kansas Purchasers have been injured in their business and property and are threatened with further injury.

e.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§50-101 *et seq*. Accordingly, Kansas Purchasers seek all forms of relief available under Kansas Stat. Ann. §§50-101 *et seq*.

93.    Plaintiff further alleges as follows:

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Maine.

b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Maine; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine; (3) Maine Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

CLASS ACTION COMPLAINT

c.     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, members of the Maine Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 *et seq*. Accordingly, Maine purchasers seek all forms of relief available under Maine Rev. Stat. Ann. 10, §§1101 *et seq*.

94.     Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Michigan.

b.     Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Michigan; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Michigan Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.     During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, Michigan Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771 *et*

28

CLASS ACTION COMPLAINT

*seq.*  Accordingly, Michigan Purchasers seek all forms of relief available under Michigan Comp. Laws Ann. §§ 445.771 *et seq.*

95.   Plaintiff further alleges as follows:

a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Minnesota.

b.   Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota; (3) Minnesota Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.   During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

d.   As a direct and proximate result of Defendants' unlawful conduct, members of the Minnesota Purchasers have been injured in their business and property and are threatened with further injury.

e.   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.50 *et seq.* Accordingly, Minnesota purchasers seek all forms of relief available under Minnesota Stat. §§ 325D.50 *et seq.*

96.   Plaintiff further alleges as follows:

a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products

CLASS ACTION COMPLAINT

1      were sold, distributed or obtained in Mississippi.

2      b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi; (3) Mississippi Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

9      c.      During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

11      d.      As a direct and proximate result of Defendants' unlawful conduct, Mississippi Purchasers have been injured in their business and property and are threatened with further injury.

14      e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §75-21-1 *et seq*. Accordingly, Mississippi Purchasers seek all forms of relief available under Mississippi Code Ann. §75-21-1 *et seq*.

18    97.    Plaintiff further alleges as follows:

19      a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Nevada.

23      b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Nevada; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada; (3) Nevada Purchasers paid supracompetitive,

CLASS ACTION COMPLAINT

1                artificially inflated prices for packaged seafood products.

2         c.      During the Class Period, Defendants' illegal conduct substantially affected

3                Nevada commerce.

4         d.      As a direct and proximate result of Defendants' unlawful conduct, Nevada

5                Purchasers have been injured in their business and property and are

6                threatened with further injury.

7         e.      By reason of the foregoing, Defendants have entered into agreements in

8                restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A *et seq.*[5]

9                Accordingly, Nevada Purchasers seek all forms of relief available under

10              Nevada Rev. Stat. Ann. §§ 598A *et seq.*

11      98.     Plaintiff further alleges as follows:

12         a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce

13                by affecting, fixing, controlling and/or maintaining, at artificial and/or

14                non-competitive levels, the prices at which packaged seafood products

15                were sold, distributed or obtained in New Mexico.

16         b.      Defendants' combinations or conspiracies had the following effects: (1)

17                packaged seafood product price competition was restrained, suppressed,

18                and eliminated throughout New Mexico; (2) packaged seafood product

19                prices were raised, fixed, maintained, and stabilized at artificially high

20                levels throughout New Mexico; (3) New Mexico Purchasers paid

21                supracompetitive, artificially inflated prices for packaged seafood

22                products.

23         c.      During the Class Period, Defendants' illegal conduct substantially affected

24                New Mexico commerce.

25

---

26  [5] In compliance with the Nevada Unfair Trade Practices Act, Nev. Rev. Stat. Ann. § 598A.210(3), Plaintiff mailed a copy of this Complaint to the Nevada Attorney General on

27  September 23, 2015.

28

d.      As a direct and proximate result of Defendants' unlawful conduct, New Mexico Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1 *et seq.* Accordingly, New Mexico Purchasers seek all forms of relief available under New Mexico Stat. Ann. §§ 57-1-1 *et seq.*

99.     Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New York.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout New York; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) New York Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, New York Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New York General Business Law § 340 *et seq.* Accordingly, New York Purchasers seek all forms of relief available

CLASS ACTION COMPLAINT

1        under New York G.B.L. § 340 *et seq.*[6]

2    100.   Plaintiff further alleges as follows:

3        a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

4            by affecting, fixing, controlling and/or maintaining, at artificial and/or

5            non-competitive levels, the prices at which packaged seafood products

6            were sold, distributed or obtained in North Carolina.

7        b.    Defendants' combinations or conspiracies had the following effects: (1)

8            packaged seafood product price competition was restrained, suppressed,

9            and eliminated throughout North Carolina; (2) packaged seafood product

10            prices were raised, fixed, maintained, and stabilized at artificially high

11            levels throughout North Carolina; (3) North Carolina Purchasers paid

12            supracompetitive, artificially inflated prices for packaged seafood

13            products.

14        c.    During the Class Period, Defendants' illegal conduct substantially affected

15            North Carolina commerce.

16        d.    As a direct and proximate result of Defendants' unlawful conduct, North

17            Carolina Purchasers have been injured in their business and property and

18            are threatened with further injury.

19        e.    By reason of the foregoing, Defendants have entered into agreements in

20            restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1 *et seq.*

21            Accordingly, North Carolina Purchasers seek all forms of relief available

22            under North Carolina Gen. Stat. §§ 75-1 *et seq.*

23    101.   Plaintiff further alleges as follows:

24        a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce

25

26    _____

27    [6] In accordance with New York G.B.L. § 340.5, Plaintiff served a copy of this Complaint on the
New York Attorney General on September 23, 2015.

28

CLASS ACTION COMPLAINT

by affecting, fixing, controlling and/or maintaining, at artificial and/or
non-competitive levels, the prices at which packaged seafood products
were sold, distributed or obtained in North Dakota.

b.     Defendants' combinations or conspiracies had the following effects: (1)
packaged seafood product price competition was restrained, suppressed,
and eliminated throughout North Dakota; (2) packaged seafood product
prices were raised, fixed, maintained, and stabilized at artificially high
levels throughout North Dakota; (3) North Dakota Purchasers paid
supracompetitive, artificially inflated prices for packaged seafood
products.

c.     During the Class Period, Defendants' illegal conduct substantially affected
North Dakota commerce.

d.     As a direct and proximate result of Defendants' unlawful conduct, North
Dakota Purchasers have been injured in their business and property and
are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in
restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01 *et
seq.* Accordingly, North Dakota Purchasers seek all forms of relief
available under North Dakota Cent. Code §§ 51-08.1-01 *et seq.*

102.     Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce
by affecting, fixing, controlling and/or maintaining, at artificial and/or
non-competitive levels, the prices at which packaged seafood products
were sold, distributed or obtained in South Dakota.

b.     Defendants' combinations or conspiracies had the following effects: (1)
packaged seafood product price competition was restrained, suppressed,
and eliminated throughout South Dakota; (2) packaged seafood product

CLASS ACTION COMPLAINT

prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota; (3) South Dakota Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce.

d.      As a direct and proximate result of Defendants' unlawful conduct, South Dakota Purchasers have been injured in their business and property and are threatened with further injury.

e.      By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1 *et seq.*  Accordingly, South Dakota Purchasers seek all forms of relief available under South Dakota Codified Laws Ann. §§ 37-1 *et seq.*

103.    Plaintiff further alleges as follows:

a.      Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Tennessee.

b.      Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee; (3) Tennessee Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.      During the Class Period, Defendants' illegal conduct substantially affected Tennessee commerce.

CLASS ACTION COMPLAINT

d.     As a direct and proximate result of Defendants' unlawful conduct, Tennessee Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101 *et seq.* Accordingly, Tennessee Purchasers seek all forms of relief available under Tennessee Code Ann. §§ 47-25-101 *et seq.*

104.   Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Utah.

b.     Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Utah; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah; (3) Utah Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.     During the Class Period, Defendants' illegal conduct substantially affected Utah commerce. For purposes of this Utah claim, the Class Period begins on May 1, 2006 (the effective date of Utah's antitrust statute).

d.     As a direct and proximate result of Defendants' unlawful conduct, Utah Purchasers have been injured in their business and property and are threatened with further injury.

e.     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Stat. §§ 76-10-919 *et seq.* (§§ 76-10-3101 *et seq.* as of Oct. 1, 2015). Accordingly, Utah Purchasers seek all

CLASS ACTION COMPLAINT

forms of relief available under Utah Stat. §§ 76-10-919 *et seq.* (§§ 76-10-3101 *et seq.* as of Oct. 1, 2015).

105.    Plaintiff further alleges as follows:

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Vermont.

b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Vermont; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Vermont Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.    During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, Vermont Purchasers have been injured in their business and property and are threatened with further injury.

e.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453 *et seq.* Accordingly, Vermont Purchasers seek all forms of relief available under Vermont Stat. Ann. 9 §§ 2453 *et seq.*

106.    Plaintiff further alleges as follows:

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in West Virginia.

37

CLASS ACTION COMPLAINT

b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia; (3) West Virginia Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

c.    During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce.

d.    As a direct and proximate result of Defendants' unlawful conduct, West Virginia Purchasers have been injured in their business and property and are threatened with further injury.

e.    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1 *et seq*. Accordingly, West Virginia Purchasers seek all forms of relief available under West Virginia Code §§ 47-18-1 *et seq*.

107.    Plaintiff further alleges as follows:

a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Wisconsin.

b.    Defendants' combinations or conspiracies had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) packaged seafood product prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin; (3) Wisconsin Purchasers paid

CLASS ACTION COMPLAINT

1    supracompetitive, artificially inflated prices for packaged seafood

2    products.

3    c.    During the Class Period, Defendants' illegal conduct substantially affected

4    Wisconsin commerce.

5    d.    As a direct and proximate result of Defendants' unlawful conduct,

6    Wisconsin Purchasers have been injured in their business and property and

7    are threatened with further injury.

8    e.    By reason of the foregoing, Defendants have entered into agreements in

9    restraint of trade in violation of Wisconsin Stat. §§133.01 *et seq.*

10   Accordingly, Wisconsin Purchasers seek all forms of relief available under

11   Wisconsin Stat. §§133.01 *et seq.*

12                              **COUNT III**

13          **State Consumer Protection and Unfair Competition Statutes**

14   108.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth

15   herein.

16   109.   Plaintiff further alleges as follows:

17   a.    Beginning on a date unknown to Plaintiff, but at least as early as January

18   1, 2005, and continuing thereafter to the present, Defendants committed

19   and continue to commit acts of unfair competition, as defined by Sections

20   17200, *et seq.* of the California Business and Professions Code, by

21   engaging in the acts and practices specified above.

22   b.    This claim is instituted pursuant to Sections 17203 and 17204 of the

23   California Business and Professions Code, to obtain restitution from these

24   Defendants for acts, as alleged herein, that violated Section 17200 of the

25   California Business and Professions Code, commonly known as the Unfair

26   Competition Law.

27

28

CLASS ACTION COMPLAINT

c.   The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

d.   Defendants' acts, omissions, misrepresentations, practices and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent; Defendants' act and practices are unfair to consumers of packaged seafood products in the State of California and throughout the United States, within the meaning of Section 17200, California Business and Professions Code; and

e.   Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

f.   California Plaintiff and each of the California Purchasers members are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

g.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

CLASS ACTION COMPLAINT

h.   The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and California Purchasers to pay supra-competitive and artificially-inflated prices for packaged seafood products.  Plaintiff and California Purchasers suffered injury in fact and lost money or property as a result of such unfair competition.

i.   The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

j.   As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition.  Plaintiff and the  California Purchasers are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such business practices, pursuant to California Business & Professions Code §17200 *et seq*.

110.   Plaintiff further alleges as follows:

a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Florida.

b.   The foregoing conduct constitutes "unfair methods of competition," and "unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Florida Stat. § 501.204.

c.   During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7

    d.    Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Florida; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Florida; (3) Florida Purchasers were deprived of free and open competition; and (4) Florida Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

8
9

    e.    As a direct and proximate result of Defendants' conduct, Florida Purchasers have been injured and are threatened with further injury.

10
11
12

    f.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201 *et seq.*, and accordingly, Florida Purchasers seek all relief available under that statute.

13

111.    Plaintiff further alleges as follows:

14
15
16
17

    a.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in Hawaii.

18
19
20

    b.    The foregoing conduct constitutes "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" within the meaning of Hawaii Rev. Stat. § 480-2.

21
22

    c.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

23
24
25
26
27

    d.    Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Hawaii; (3) Hawaii Purchasers were deprived of free and open

28

CLASS ACTION COMPLAINT

competition; and (4) Hawaii Purchasers paid supracompetitive, artificially
inflated prices for packaged seafood products.

e.     As a direct and proximate result of Defendants' conduct, Hawaii
Purchasers have been injured and are threatened with further injury.

f.     Defendants have engaged in unfair competition or unfair or deceptive acts
or practices in violation of Hawaii Rev. Stat. § 480-2.  Accordingly,
Hawaii Purchasers seek all relief available under Hawaii Rev Stat. § 480
*et seq*.

112.    Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce
by affecting, fixing, controlling and/or maintaining, at artificial and/or
non-competitive levels, the prices at which packaged seafood products
were sold, distributed or obtained in Nebraska.

b.     The foregoing conduct constitutes "unfair methods of competition and
unfair or deceptive acts or practices in the conduct of any trade or
commerce" within the meaning of Neb. Rev. Stat. § 59-1602.

c.     During the Class Period, Defendants' illegal conduct substantially affected
Nebraska commerce and consumers.

d.     Defendants' unlawful conduct had the following effects: (1) packaged
seafood product price competition was restrained, suppressed, and
eliminated throughout Nebraska; (2) packaged seafood product prices
were raised, fixed, maintained and stabilized at artificially high levels
throughout Nebraska; (3) Nebraska Purchasers were deprived of free and
open competition; and (4) Nebraska Purchasers paid supracompetitive,
artificially inflated prices for packaged seafood products.

e.     As a direct and proximate result of Defendants' conduct, Nebraska
Purchasers have been injured and are threatened with further injury.

CLASS ACTION COMPLAINT

f.  Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601 *et seq*., and accordingly, Nebraska Purchasers seek all relief available under that statute.

113.  Plaintiff further alleges as follows:

a.  Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New Mexico.

b.  Defendants also took efforts to conceal their agreements from New Mexico Purchasers.

c.  The foregoing conduct constitutes "unfair or deceptive trade practices" and "unconscionable trade practices in the conduct of any trade or commerce" within the meaning of New Mexico Stat. § 57-12-3, in that such conduct resulted in a gross disparity between the value received by New Mexico Purchasers and the prices paid by them for packaged seafood products as set forth in New Mexico Stat. § 57-12-2E.

d.  During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

e.  Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) New Mexico Purchasers were deprived of free and open competition; and (4) New Mexico Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

CLASS ACTION COMPLAINT

f.   As a direct and proximate result of Defendants' conduct, New Mexico Purchasers have been injured and are threatened with further injury.

g.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1 *et seq.*, and accordingly, New Mexico Purchasers seek all relief available under that statute.

114.   Plaintiff further alleges as follows:

a.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in New York.

b.   Defendants also took efforts to conceal their agreements from New York Purchasers.

c.   Defendants' illegal conduct substantially affected New York commerce and consumers.

d.   The conduct of Defendants as described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

e.   As consumers, New York Purchasers were targets of the conspiracy.

f.   Defendants' secret agreements as described herein were not known to members New York Purchasers.

g.   Defendants made public statements about the price of packaged seafood products that Defendants knew would be seen by New York Purchasers; such statements either omitted material information that rendered these

CLASS ACTION COMPLAINT

1    statements that they made materially misleading or affirmatively

2    misrepresented the real cause of price increases for packaged seafood

3    products; and, Defendants alone possessed material information that was

4    relevant to consumers, but failed to provide the information.

5    h.    Because of Defendants' unlawful trade practices in the State of New York,

6          there was a broad impact on New York Purchasers who indirectly

7          purchased packaged seafood products; and New York Purchasers have

8          been injured because they have paid more for packaged seafood products

9          than they would have paid in the absence of Defendants' unlawful trade

10         acts and practices, and are threatened with further injury.

11   i.    Because of Defendants' unlawful trade practices in the State of New York,

12         New York Purchasers who indirectly purchased packaged seafood

13         products were misled to believe that they were paying a fair price for

14         packaged seafood products, or that the price increases for packaged

15         seafood products were for valid business reasons.

16   j.    Defendants knew that their unlawful trade practices with respect to pricing

17         of packaged seafood products would have an impact on New York

18         Purchasers and not just Defendants' direct customers;

19   k.    Defendants knew that their unlawful trade practices with respect to pricing

20         of packaged seafood products would have a broad impact, causing

21         consumer class members who indirectly purchased packaged seafood

22         products to be injured by paying more for packaged seafood products than

23         they would have paid in the absence of Defendants' unlawful trade acts

24         and practices.

25   l.    During the Class Period, each of the Defendants named herein, directly or

26         indirectly through affiliates they dominated and controlled, manufactured,

27         sold and/or distributed packaged seafood products in New York.

28

CLASS ACTION COMPLAINT

m.     New York Purchasers seek actual damages for their injuries caused by these violations in an amount to be determined at trial.  Without prejudice to their contention that Defendants' unlawful conduct was willful and knowing, New York Purchasers do not seek in this action to have those damages trebled pursuant to N.Y. Gen. Bus. Law § 349 (h).

115.   Plaintiff further alleges as follows:

a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which packaged seafood products were sold, distributed or obtained in North Carolina.

b.     Defendants also took efforts to conceal their agreements from North Carolina Purchasers.

c.     The conduct of Defendants as described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina Gen. Stat. §75-1.1 *et seq.*, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

d.     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

e.     Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) North Carolina Purchasers were deprived of free and open competition; and (4) North Carolina Purchasers

CLASS ACTION COMPLAINT

1               paid supracompetitive, artificially inflated prices for packaged seafood

2               products.

3        f.      As a direct and proximate result of Defendants' conduct, North Carolina

4               Purchasers have been injured and are threatened with further injury.

5        g.     During the Class Period, each of the Defendants named herein, directly or

6               indirectly through affiliates they dominated and controlled, manufactured,

7               sold and/or distributed packaged seafood products in North Carolina.

8        h.     Defendants have engaged in unfair competition or unfair or deceptive acts

9               or practices in violation of North Carolina Gen. Stat. § 75-1.1 *et seq.*, and

10              accordingly, North Carolina Purchasers seek all relief available under that

11              statute.

12    116.   Plaintiff further alleges as follows:

13        a.     Defendants agreed to, and did in fact, act in restraint of trade or commerce

14              by affecting, fixing, controlling and/or maintaining, at artificial and/or

15              non-competitive levels, the prices at which packaged seafood products

16              were sold, distributed or obtained in Vermont.

17        b.     Defendants deliberately failed to disclose material facts to Vermont

18              Purchasers concerning Defendants' unlawful activities and artificially

19              inflated prices for packaged seafood products.  Defendants owed a duty to

20              disclose such facts, and considering the relative lack of sophistication of

21              the average, non-business consumer, Defendants breached that duty by

22              their silence.  Defendants misrepresented to all consumers during the

23              Class Period that Defendants packaged seafood product prices were

24              competitive and fair.

25        c.     Because of Defendants' unlawful and unscrupulous trade practices in

26              Vermont, Vermont Purchasers who indirectly purchased packaged seafood

27              products were misled or deceived to believe that they were paying a fair

28

CLASS ACTION COMPLAINT

price for packaged seafood products or that the price increases for packaged seafood products were for valid business reasons.

    d.    Defendants' unlawful conduct had the following effects: (1) packaged seafood product price competition was restrained, suppressed, and eliminated throughout Vermont; (2) packaged seafood product prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Vermont Purchasers were deprived of free and open competition; and (4) Vermont Purchasers paid supracompetitive, artificially inflated prices for packaged seafood products.

    e.    As a direct and proximate result of Defendants' illegal conduct, Vermont Purchasers suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above.  That loss was caused by Defendants' willful and deceptive conduct, as described herein.

    f.    Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of Vermont Stat. Ann. Title 9, § 2451 *et seq*., and accordingly, Vermont Purchasers seek all relief available under that statute.

## COUNT IV

### Unjust Enrichment and Disgorgement of Profits

117.    Plaintiff incorporates and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

118.    Defendants have been unjustly enriched through overpayments by Plaintiff and the Class members and the resulting profits.

119.    Under common law principles of unjust enrichment, Defendants should not be permitted to retain the benefits conferred via overpayments by class members in the following

states: Arizona, California, District of Columbia, Iowa, Maine, Michigan, New Mexico and South Dakota.

120.    Plaintiff and the class members in each of the states listed above seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and the Class members may seek restitution.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays:

A.    That the Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Classes;

B.    That the Court adjudge and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Section 1 of the Sherman Act;

C.    That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiff and the Classes;

D.    That the Court award Plaintiff and the Classes treble damages;

E.    That the Court award Plaintiff and the Classes attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law;

F.    That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintaining or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

CLASS ACTION COMPLAINT

1    G.    That the Court award Plaintiff and the Class members such other and further relief

2  as may be deemed necessary and appropriate.

3                                **DEMAND FOR JURY TRIAL**

4    Plaintiff requests a jury trial on all matters so triable.

5  Dated: September 23, 2015                Respectfully submitted,

6                                            */s/ Christopher T. Micheletti*
                                            Christopher T. Micheletti (136446)
7                                            Judith A. Zahid (215418)
                                            Michael S. Christian (212716)
8                                            Jiangxiao Athena Hou (215256)
                                            ZELLE HOFMANN VOELBEL & MASON LLP
9                                            44 Montgomery St., Suite 3400
                                            San Francisco, CA 94104
10                                           Telephone: (415) 693-0700
                                            Facsimile: (415) 693-0770
11                                           Email:    cmicheletti@zelle.com
                                                      jzahid@zelle.com
12                                                    mchristian@zelle.com
                                                      ahou@zelle.com

13
                                            Eric B. Snyder
14                                           Katherine E. Charonko
                                            BAILEY GLASSER LLP
15                                           209 Capitol St.
                                            Charleston, WV 25301
16                                           Telephone: (304) 345-6555
                                            Facsimile: (304) 342-1110
17                                           Email:    esnyder@baileyglasser.com
                                                      kcharonko@baileyglasser.com
18
19                                           *Counsel for Plaintiff and the Classes*
20
21
22
23
24
25
26
27  3267050v1
28

CLASS ACTION COMPLAINT